UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES MAJOR HENLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02385-JMS-TAB |
| | ) | |
| TROY SUNIER, Indiana State Police Trooper, in his individual capacity, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This case arises out of a series of interactions between Troy Sunier, an Indiana State Police Trooper, and plaintiff James Henley. Mr. Henley engages in an activity that he refers to as "signing," during which he stands at various intersections, holding a sign that asks passers-by for assistance. In 2016, Trooper Sunier repeatedly encountered Mr. Henley signing at the same highway exit ramp, and several times he issued Mr. Henley citations for solicitation of business on a highway. Nearly a year after those interactions, after finding Mr. Henley signing again at the same location, Trooper Sunier arrested Mr. Henley for refusal to aid an officer. Following that arrest, Mr. Henley filed suit in this Court, alleging that Trooper Sunier violated his rights under 42 U.S.C. § 1983 and the First and Fourth Amendments to the United States Constitution. After suit was filed, Trooper Sunier engaged in conduct that the parties term "move-along" orders after encountering him again at the interstate exit ramp. Mr. Henley challenges those orders as being violative of the First Amendment.

Presently pending before the Court are two motions: Mr. Henley's Motion for Partial Summary Judgment as to two of his claims, and Trooper Sunier's Motion for Summary Judgment

1

as to all of Mr. Henley's claims. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** those Motions.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standard discussed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

Plaintiff James Henley is a resident of Indianapolis. [Filing No. 48-6 at 52.] Since approximately January 2012, Mr. Henley has engaged in "signing" activities, which involve him standing along the side of an intersection holding a sign that requests help or monetary support from the occupants of passing vehicles. [Filing No. 48-6 at 52-55.] He often engages in these activities along Keystone Avenue at various points between 86th and 96th Streets, including at the exit ramps from I-465 to Keystone Avenue. [Filing No. 48-6 at 52.] Intermittently since 2012, Mr. Henley has signed nearly every day, but he describes himself as currently "semi-retired," signing only on a part-time basis. [Filing No. 48-6 at 46; Filing No. 48-6 at 55.]

Defendant Troy Sunier is a trooper with the Indiana State Police in Indianapolis. [Filing No. 48-8 at 4.] On multiple occasions, Trooper Sunier has witnessed Mr. Henley signing at the exit ramps at I-465 and Keystone Avenue at 86th Street. [Filing No. 48-8 at 6-7.] Trooper Sunier has on several occasions spoken to Mr. Henley, asking for Mr. Henley's assistance in "keeping the intersection safe and free from distractions and hazards on the roadway." [Filing No. 48-2 at 1; Filing No. 48-6 at 133.] Trooper Sunier has also issued Mr. Henley several citations for civil infractions while signing. [Filing No. 50 at 4.] In November 2016, Trooper Sunier had a conversation with Indianapolis Metropolitan Police Department Officer Michael Martin regarding several individuals involved in begging activities. [Filing No. 48-8 at 6-7.] Both Trooper Sunier and Officer Martin were familiar at that time with Mr. Henley, [Filing No. 48-8 at 6-7], and after discussing the locations where Mr. Henley typically signed, Officer Martin asked Trooper Sunier to "stop the panhandling," [Filing No. 48-8 at 6].

According to Trooper Sunier, on February 1, 2017, he saw Mr. Henley standing on the pavement of the roadway near the I-465 westbound exit to Keystone Avenue at 86th Street, holding a sign asking for help. [Filing No. 50 at 4; Filing No. 48-2 at 1.] Mr. Henley agrees that he was

4

present at that exit on that date, but states that he had not yet started signing when Trooper Sunier arrived. [Filing No. 48-6 at 124.] Mr. Henley attests that he was standing in the grassy area next to the road with his back to oncoming traffic when Trooper Sunier approached him. [Filing No. 48-6 at 125.] The parties agree that Trooper Sunier immediately told Mr. Henley to put his hands behind his back and arrested him for "refusal to aid an officer" in violation of Indiana Code § 35-44.1-3-3. [Filing No. 48-2 at 1; Filing No. 48-6 at 126-128.] Mr. Henley was held for approximately twelve hours before being released. [Filing No. 48-6 at 135.] All charges against him were ultimately dismissed by the Marion Superior Court. [Filing No. 60-1.]

Following the arrest, Mr. Henley continued to sign, but he did not return to the I-465 and Keystone Avenue location until approximately four to six weeks after his arrest. [Filing No. 48-6 at 136.] On July 14, 2017, Mr. Henley filed his original Complaint against Trooper Sunier, alleging, among other claims, violation of the First and Fourth Amendments, stemming from his arrest. [Filing No. 1.] On August 24, 2017, Mr. Henley was standing near the I-465 westbound exit to Keystone Avenue at 86th Street. [Filing No. 48-6 at 140.] As Mr. Henley was adjusting his backpack (and not engaged in signing), Trooper Sunier drove by in his vehicle. [Filing No. 48-6 at 144.] Trooper Sunier rolled down his window and stated that just because Mr. Henley had a lawsuit pending, that did not give Mr. Henley the right to "do what [he] was doing." [Filing No. 48-6 at 144-146.] Mr. Henley understood that statement as a "move-along" order, and he left that location. [Filing No. 48-6 at 145.] The next day, on August 25, 2017, Mr. Henley was signing at the corner of 86th Street and Keystone Avenue when Trooper Sunier drove past. [Filing No. 48-6 at 147-148.] Trooper Sunier "squawked" his siren and motioned for Mr. Henley to move along. [Filing No. 48-6 at 148.]

After filing two amended complaints, Mr. Henley moved to voluntarily dismiss several of the claims in his Second Amended Complaint. [Filing No. 45.] The Court granted that partial Motion to Dismiss, treating it as a Motion to Amend the Complaint under Fed. R. Civ. P. 15(a). [Filing No. 46 at 1.] Mr. Henley then filed the operative Third Amended Complaint, alleging only the claims that remain for resolution. [Filing No. 47.] Presently pending before the Court are Mr. Henley's Motion for Partial Summary Judgment, [Filing No. 48], and Trooper Sunier's Cross-Motion for Summary Judgment, [Filing No. 51]. Those Motions are now fully briefed and ripe for the Court's review.

### III.
### DISCUSSION

Mr. Henley raises three claims arising out of the events detailed above: (1) violation of the First and/or Fourth Amendments, stemming from his February 1, 2017 arrest; (2) violation of the First Amendment stemming from the August 24, 2017 move-along order; and (3) violation of the First Amendment stemming from the August 25, 2017 move-along order. Mr. Henley moves for summary judgment as to his Fourth Amendment false-arrest claim and the August 25, 2017 move-along order. Trooper Sunier cross-moves for summary judgment as to all of Mr. Henley's claims, and moves for summary judgment as to the issues of injunctive and declaratory relief. The Court addresses each in turn.

#### A. Constitutional Claims and Injunctive Relief

The briefing and procedural history in this case highlight the complexities and challenges attendant to litigating constitutional claims against state actors. Constitutional litigation presents plaintiffs and defendants with a litany of choices and related consequences, and it is no small feat to become adept at navigating them. Plaintiffs must decide, for example, which government actor(s) to sue; whether to sue them in their individual or official capacities, or both; whether to

request equitable relief, damages, or both; and whether to challenge a statute, and if so, in a facial or as-applied manner. All of these choices come with real and tangible consequences regarding what claims are cognizable, what theories of liability may be properly invoked, what relief may be awarded, what procedural demands apply, and what defenses may be raised. Not infrequently, the Court is presented with briefing that evidences some confusion from both parties about these choices and their consequences. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that, regarding the practical and doctrinal differences between individual and official capacity claims, "this distinction apparently continues to confuse lawyers…").

The briefing here evidences many of those confusions, impacting the nature and scope of the claims raised and the relief sought. The Court, therefore, begins by addressing the scope of Mr. Henley's claims and the relief that he may seek.

       *1. Constitutional Challenge to Ind. Code § 35-44.1-3-3*

Without question, this case concerns whether Trooper Sunier effected an arrest and issued two move-along orders in a manner consistent with the demands of the Constitution. So Mr. Henley's claims are, in that sense, constitutional in nature. In one portion of Mr. Henley's brief in support of his Motion for Partial Summary Judgment, however, he appears to raise a different sort of challenge: one addressing the constitutionality of the Indiana statute under which Trooper Sunier arrested Mr. Henley. [Filing No. 49 at 8-11.] While Mr. Henley frames his argument as simply a basis for supporting declaratory and injunctive relief, he argues explicitly that there are "[c]onstitutional deficiencies with the language of the statute, as applied and on its face." [Filing No. 49 at 8.] The Court is unclear as to how the facial or as-applied unconstitutionality of a statute would form the basis for injunctive or declaratory relief when a claim challenging the statute is not raised. But in any event, Trooper Sunier appears to construe this argument as a separate claim

challenging the constitutionality of the statute, and he argues that any such claim is belatedly raised here. [Filing No. 58 at 13.] Trooper Sunier points out that Mr. Henley did not raise a challenge to the statute either in his Third Amended Complaint or in his statement of claims. [Filing No. 58 at 13.]

The Court agrees with Trooper Sunier that neither Mr. Henley's Third Amended Complaint nor his statement of claims raise any facial or as-applied challenge to Ind. Code § 35-44.1-3-3. Mr. Henley's counsel is no stranger to constitutional litigation, and had he intended to raise a constitutional challenge to the statute itself, there are specific procedural steps he was required to follow. He should have included such a challenge in his complaint. Moreover, he should have complied with the requirements of the Federal Rule of Civil Procedure 5.1(a), which applies to statutory challenges. That Rule provides that a party, when drawing into question the constitutionality of a state statute, must promptly:

> **(1)** file a notice of constitutional question stating the question and identifying the paper that raises it, if:
> **...**
> > **(B)** a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> **(2)** serve the notice and paper … on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a). Therefore, to the extent that Mr. Henley attempts to raise a facial or as-applied challenge to the constitutionality of Ind. Code § 35-44.1-3-3, such a claim is foreclosed to him in this matter.

### 2. Injunctive Relief

In his Third Amended Complaint, Mr. Henley requests an injunction "enjoining Defendant from giving Plaintiff move along orders." [Filing No. 47 at 7.] As the Court referenced above, in the context of claims against state actors in federal court, issues of sovereign immunity and related

doctrines impact whom a plaintiff may sue and what relief is available to them. Much ink has been spilled by courts and commentators alike regarding the legal regime governing such suits, including the limitations imposed by the Eleventh Amendment and the exceptions recognized by *Ex Parte Young*. As relevant here, the parties dispute whether Mr. Henley's Third Amended Complaint should be construed as against Trooper Sunier in his official capacity, in addition to his individual capacity, and the import of that distinction as it applies to a request for injunctive relief.

a. Individual or Official Capacity

Mr. Henley argues that his Third Amended Complaint should be construed as raising claims against Trooper Sunier in both his individual and official capacities, [Filing No. 57 at 11], which Trooper Sunier opposes, [Filing No. 58 at 7-8]. Mr. Henley further argues that despite the fact that his Third Amended Complaint explicitly specifies only an individual-capacity suit against Trooper Sunier, it contains allegations that should be construed as raising claims against Trooper Sunier in his official capacity as well. [Filing No. 57 at 11.] In support of that position, Mr. Henley points to case law in which the Seventh Circuit has clarified how complaints should be construed when the capacity in which the plaintiff has sued the defendant is not specified.

The case law to which Mr. Henley cites is not applicable here, because his complaint is not ambiguous. In every iteration of his complaint, Mr. Henley has specifically identified Trooper Sunier "in his individual capacity" as the defendant in this case.[1] [*See* Filing No. 1; Filing No. 13; Filing No. 24; Filing No. 47.] But even if the Court were to refer to the allegations in the Third Amended Complaint as relevant considerations, they fare no better in alleging an official-capacity suit. In *Miller v. Smith*, the Seventh Circuit considered the proper construction of a complaint that

---

[1] Moreover, Mr. Henley filed a Motion to Amend/Correct his Third Amended Complaint to add an official-capacity claim against Trooper Sunier, which was denied by the Magistrate Judge on September 24, 2018. [Filing No. 59 at 3.] Mr. Henley did not object to that Order.

did not specify the capacity in which the defendants were sued. 220 F.3d 491, 494 (7th Cir. 2000). The court concluded that it was "clear" that the plaintiff's suit against two Indiana state troopers was an individual-capacity one, because "at no time did [the plaintiff] suggest that either Indiana or [the city of] LaGrange espoused a custom or policy of robbing and beating innocent motorists. Thus…we can safely assume that he intended to file suit against the officers in their individual capacities." *Miller*, 220 F.3d at 494. The same is true here. While Mr. Henley argues that his complaints have alleged that "Trooper Sunier has a custom[,] policy[,] or practice of engaging in similar conduct," [Filing No. 57 at 11], Trooper Sunier's individual practices are not the relevant consideration in an official-capacity claim. The issue is whether there existed a widespread, *Monell*-esque policy or custom that resulted in Mr. Henley's deprivation, and his Third Amended Complaint lacks any such allegation. This is, therefore, an individual-capacity claim only.

b. Propriety of Injunctive Relief

In his briefs in opposition to Mr. Henley's Motion for Partial Summary Judgment and in support of his own Motion for Summary Judgment, Trooper Sunier argues that Mr. Henley may not seek injunctive relief, because such relief is not available in individual-capacity Section 1983 claims. [Filing No. 53 at 8-13; Filing No. 58 at 5-12.] Mr. Henley disagrees. [Filing No. 57 at 5-11; Filing No. 60.]

While Trooper Sunier's briefing engages in a lengthy discussion of sovereign immunity, the Eleventh Amendment, and the *Ex Parte Young* doctrine, the resolution of this issue is considerably more straightforward.[2] In *Greenawalt v. Indiana Dep't of Corrs.,* 397 F.3d 587 (7th

---

[2] The Court also notes that Trooper Sunier's briefing only sporadically follows the Court's designated citation format, [*See* Filing No. 6], cites the Indiana state law standard for summary judgment, [Filing No. 58 at 5], which does not apply in federal court, and erroneously cites the standard for a preliminary injunction (for which Mr. Henley does not move) as the legal standard that applies to a request for injunctive relief, [Filing No. 53 at 9]. In future filings in this case and

Cir. 2005), the plaintiff brought individual-capacity suits against several officials of the Indiana Department of Corrections. She requested as injunctive relief that those individuals be required to expunge certain information from her personnel file. *Greenawalt*, 397 F.3d at 588. The individual defendants moved to dismiss the claims against them based on qualified immunity, and the district court granted that motion. *Id.* The Seventh Circuit concluded that the dismissal was erroneous, because qualified immunity only applies to claims for damages, and not claims for injunctive relief. *Id.* at 589. But, the court concluded, dismissal was nonetheless appropriate "because section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." *Id.* (citing *Luder v. Endicott*, 253 F.3d 1020, 1024-25 (7th Cir. 2001)).

Trooper Sunier argues that the result in *Greenawalt* controls here and unequivocally establishes that injunctive relief is not available under Section 1983 in individual-capacity suits. [Filing No. 58 at 8.] Mr. Henley responds that the facts here are distinguishable from *Greenawalt* because the plaintiff in that case, unlike here, was a state employee. [Filing No. 60 at 2.] The Court finds nothing in *Greenawalt* (or *Luder*, to which *Greenawalt* cites) to support a conclusion that the plaintiff's employment status impacts what relief is available. And Mr. Henley's cited passage discusses whether an action for *damages* against a state officer in his individual capacity could be barred by sovereign immunity—not whether a plaintiff-employee may seek injunctive relief. [Filing No. 60 at 2 (quoting *Luder*, 253 F.3d at 1023 ("The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant…because it is the voluntary choice of the state, not a cost forced on it by the federal-court suit. Likewise irrelevant is the fact that any exposure of state employees to suit in federal court will, by increasing the expected cost

---

others, the Court reminds counsel of his obligation to carefully review his filings for procedural and legal accuracy. Failure to do so often results in review that is unnecessarily cumbersome for the Court.

of working for the state, compel the state by reason of competition in the labor market to pay its employees more than if they had a blanket immunity from such suits. It is also irrelevant that the judgment may exceed the employee-defendant's capacity to pay unless he is indemnified…")).] The Court concludes that *Greenawalt* is both on-point and binding, and this Court must apply its explicit holding.

Mr. Henley points to at least one case from outside this Circuit that concludes—contrary to *Greenawalt*—that injunctive relief is available in individual-capacity Section 1983 claims. *See ACLU of Minn. v. Tarek ibn Ziyad Academy, 788 F. Supp. 2d 950, 959 (D. Minn. 2011)* (concluding that individual-capacity Section 1983 claims for injunctive relief could proceed). This may indeed be the case, but this Court is bound to follow in-Circuit precedent, and Mr. Henley points to no cases within this Circuit overruling *Greenawalt*'s conclusion.

The Court therefore concludes that, to the extent that Mr. Henley establishes liability on any of his claims, injunctive relief is not an appropriate remedy in this case. Defendants are entitled to summary judgment as to any claims for injunctive relief.

### B. February 1, 2017 Arrest: Fourth Amendment False-Arrest Claim

Mr. Henley moves for summary judgment on the claim relating to his February 1, 2017 arrest, arguing that it was an unlawful seizure in violation of the Fourth Amendment. [Filing No. 49 at 7-8.] Trooper Sunier cross-moves for summary judgment on this claim, arguing that he had probable cause to arrest Mr. Henley. [Filing No. 53 at 13-16.] Alternatively, Trooper Sunier argues, even if probable cause were lacking, he is entitled to qualified immunity as to this claim. [Filing No. 53 at 16-19.]

### 1. Probable Cause Determination

The parties appear to agree that Mr. Henley's Fourth Amendment claim is properly characterized as one alleging false arrest. [Filing No. 53 at 13; Filing No. 57 at 13.] "A claim of false arrest is an allegation that a plaintiff was arrested without probable cause, in violation of the Fourth Amendment." *Hurt v. Wise*, 880 F.3d 831, 841 (7th Cir. 2018). The existence of probable cause is an absolute defense to a claim of false arrest, and "[w]hether probable cause existed at the time of the arrest depends on the totality of the circumstances." *Id.* at 831. "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Muhammad v. Pearson*, 900 F.3d 898, 907-08 (7th Cir. 2018) (internal quotation and citation omitted).

The standard for probable cause in a false arrest claim is an objective, rather than a subjective one. *See, e.g., Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) ("To make this determination, [the Court] must step into the shoes of a reasonable person in the position of the officer, considering the facts known to the officer at the time. This is an objective inquiry; [the Court] do[es] not consider the subjective motivations of the officer.") (internal quotations and citations omitted). An officer's probable cause determination "depends on the elements of the applicable criminal statute." *Id*. The Court may decide whether probable cause exists "[o]nly if the underlying facts claimed to support probable cause are not in dispute." *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). If those facts are in dispute, then "[t]he jury must determine the existence of probable cause." *Id.*

The material facts surrounding Mr. Henley's arrest are undisputed.[3] Instead, the parties dispute the import of those facts in light of the elements of the statute. Indiana Code § 35-44.1-3-3 provides that "[a] person who, when ordered by a law enforcement officer to assist the officer in the execution of the officer's duties, knowingly or intentionally, and without a reasonable cause, refuses to assist commits refusal to aid an officer, a Class B misdemeanor." Ind. Code § 35-44.1-3-3 (emphasis added). In support of his own Motion for Summary Judgment, Mr. Henley argues that two of the elements of the crime of refusal to aid an officer were clearly not present at the time of Mr. Henley's arrest, and therefore that probable cause was lacking: (1) "Trooper Sunier did not order Henley to assist Trooper Sunier in the execution of his duties"; and (2) engaging in protected First Amendment activity constitutes a "reasonable cause," for which the statute provides a carve-out of liability.[4] [Filing No. 49 at 8.] In his brief in opposition to summary judgment, Trooper Sunier does not respond to Mr. Henley's arguments. [Filing No. 58.]

In his own brief in support of summary judgment, Trooper Sunier argues that he had probable cause to arrest Mr. Henley, because Trooper Sunier had issued Mr. Henley orders to assist during prior interactions between the two. [Filing No. 53 at 14-16.] He also argues that the statutory term "refuse" should be given its "ordinary" meaning. [Filing No. 53 at 14.] In response, Mr. Henley argues that Trooper Sunier's prior orders that Mr. Henley "vacate the geographic area"

---

[3] The parties dispute whether Mr. Henley was holding up his sign at the time that he was arrested, but as the discussion below illustrates, that factual dispute is not material to the resolution of this claim.

[4] Immediately following these arguments, Mr. Henley raises the argument described above regarding the alleged facial and as-applied constitutional deficiencies of the statute. [Filing No. 49 at 8.] As described above, addressing Trooper Sunier's arguments in response, the Court has concluded that Mr. Henley failed to raise a statutory challenge in this matter.

do not constitute orders to assist under the statute. [Filing No. 57 at 13-14.] He also reiterates his argument regarding the "reasonable cause" element. [Filing No. 57 at 14.]

Trooper Sunier concedes that at the time of Mr. Henley's arrest, he neither said anything to Mr. Henley, nor issued him any order to assist. [Filing No. 53 at 5.] After silently observing Mr. Henley's signing activities, Trooper Sunier did not engage Mr. Henley at all—Trooper Sunier simply approached Mr. Henley and informed him that he was under arrest. [*See* Filing No. 53 at 5 (Defendant's Statement of Material Facts not in Dispute: "On February 1, 2017, Sunier encountered Plaintiff on the westbound off-ramp of 465 and Keystone. Plaintiff had his back to oncoming traffic when Sunier arrived at the intersection. Sunier exited his vehicle and asked Plaintiff to put his hands behind his back.").] Trooper Sunier argues that he nonetheless had probable cause to believe that Mr. Henley had refused an order to assist, because during other, prior interactions between the two, Trooper Sunier had "ordered" Mr. Henley to assist him in the execution of his duties by keeping the roadway clear. [Filing No. 53 at 14-16.] He points specifically to four prior conversations with Mr. Henley, the latest of which occurred on March 15, 2016—nearly one year prior to Mr. Henley's February 1, 2017 arrest.

The statute provides that "[a] person who, *when ordered* by a law enforcement officer to assist the officer in the execution of the officer's duties…refuses to assist commits refusal to aid an officer..." Ind. Code § 35-44.1-3-3 (emphasis added). While the parties focus their arguments on other issues, the Court concludes that the question here is whether, as Trooper Sunier necessarily argues, "when ordered" means "a year after having been ordered." The Court concludes that it does not.

First, the plain meaning of the statutory language is at odds with Trooper Sunier's interpretation. In Indiana, courts "look first to the statutory language itself and give effect to the

plain and ordinary meaning of statutory terms." *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). In the context of criminal statutes, they "must be strictly construed against the State, and may not be enlarged beyond the fair meaning of the language used." *Id.* at 1194 (internal quotation and citation omitted). As the Indiana Supreme Court has emphasized, criminal statutes:

> should give fair warning about what conduct they prohibit. This principle applies most often through the rule of lenity, which requires us to interpret *ambiguous* criminal statutes in the defendant's favor as far as the language can reasonably support. And it weighs even more heavily when the *plain meaning* is in the defendant's favor. How can a defendant have fair warning about criminal liability that has no basis in the law's plain meaning? Such a result would raise serious due-process concerns.

*Calvin v. State*, 87 N.E.3d 474, 478-79 (Ind. 2017) (emphasis in original). There is simply no support for Trooper Sunier's proposition that the plain and ordinary meaning of the phrase "when ordered" means "a year after being ordered." First, common usage of the phrase "when ordered" is "at the time ordered" or "contemporaneous with the order." *See, e.g.,* Merriam-Webster Dictionary, last accessed online on November 20, 2018, https://www.merriam-webster.com/dictionary (defining "when" in adverbial use as "at or during which time"). While there is undoubtedly some range of time that will fall within that span, to equate "when ordered" with "a year after being ordered" simply stretches the possible meaning of "when" beyond its breaking point. This is particularly true in the context of a criminal statute, which must be narrowly construed.

Second, Trooper Sunier's expansive definition of the term "when ordered" is not supported by any case law cited by him or located by this Court. Indiana Code § 35-44.1-3-3 was enacted in 2012, using language identical to its predecessor, which was originally enacted in 1976 as Indiana Code § 35-44-3-7. The Court has located very few cases citing either version of the statute, and Trooper Sunier points to only one. In every case in which the statute was applied, the order to assist and the refusal occurred within the same interaction, in a proximity that can best be described

as immediate. *See Low v. State*, 580 N.E.2d 737, 738, 740-41 (Ind. Ct. App. 1991) (finding sufficient evidence to support defendant/appellant's conviction for violation of Ind. Code § 35-44-3-7 where defendant notified a caller that police were in the room after having been ordered not to disclose the police presence); *Kucenko v. Marion Cnty. Sheriff*, 2007 WL 1650939, at *10 (S.D. Ind. 2007) (discussing application of Ind. Code § 35-44-3-7 where police ordered subject to open a padlocked door and he refused, instead standing in front of the door); *Findlay v. Lendermon*, 2012 WL 5948241, at *9 (N.D. Ind. 2012) (finding probable cause under Ind. Code § 35-44.1-3-3 where officer instructed subject to turn over video camera, but subject withheld and attempted to dissemble it), *rev'd only as to another claim by Findlay v. Lendermon*, 722 F.3d 895 (7th Cir. 2013). As described above, while the statute certainly may permit some wiggle room in temporal proximity between the order and the refusal, no case even comes close to suggesting or supporting the argument that a delay of one year is encompassed within the statutory prohibition.

And finally, Trooper Sunier's reading of the statute creates a regime of potential criminal liability that can be described, at best, as troubling. Trooper Sunier's interpretation suggests that individuals could be (and indeed are) subject to standing orders by the police officers with whom they come into contact, apparently in perpetuity.[5] There is no shortage of examples that the Court can conjure to illustrate the disturbing consequences of the statutory meaning that Trooper Sunier

---

[5] Trooper Sunier's argument also implicitly contends that this is true despite an individual's having complied with an order at the time it was given. Trooper Sunier argues that several prior interactions with Mr. Henley are "relevant to the present case in determining whether [Trooper] Sunier had probable cause to arrest" Mr. Henley. [Filing No. 53 at 14.] The first two of those interactions occurred on January 29, 2016 and February 19, 2016. In both of those instances, the undisputed factual evidence is that Trooper Sunier ordered Mr. Henley to leave the area, and Mr. Henley did so, complying with Trooper Sunier's order. [Filing No. 48-6 at 85; Filing No. 48-6 at 101.] As to the last interaction between the two, on March 15, 2016, Trooper Sunier handcuffed Mr. Henley, drove him to another location, and released him. [Filing No. 48-6 at 113.] Trooper Sunier nonetheless argues that these interactions provided him with probable cause to believe that, at a later time, Mr. Henley refused to comply with an order to assist.

suggests. For example, an officer could pull a driver over for speeding and ask her to assist the officer in keeping the roads safe by complying with the speed limit. Under Trooper Sunier's interpretation, that officer would have probable cause to arrest the driver for refusal to aid if a year later, or two years later, he pulled her over again for speeding. This is simply not a plausible reading of the conduct that the statute prohibits.

"Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *Muhammad*, 900 F.3d at 907-08. The Court concludes that, based on the elements of the statute, a prudent person would not have believed that Mr. Henley committed the offense of refusing to aid an officer, because Trooper Sunier did not issue Mr. Henley an order to assist.

### 2. *Qualified Immunity*

Trooper Sunier argues that even if he lacked probable cause to arrest Mr. Henley, he is nonetheless entitled to summary judgment on the basis of qualified immunity. [Filing No. 53 at 16.]

In the context of claims under 42 U.S.C. § 1983 for violations of constitutional rights, government officials are entitled to qualified immunity unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (internal quotation and citation omitted); *see also Muhammad*, 900 F.3d at 903 ("…the doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

"'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 590 (internal quotation and citations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations and citations omitted). In the context of a false arrest claim, "[e]ven if, in hindsight, it appears that probable cause was lacking, qualified immunity is still available if the arresting officers reasonably could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed. This is often called arguable probable cause." *Hurt*, 880 F.3d at 841.

Trooper Sunier argues that a reasonable officer in his position could have mistakenly believed that he had probable cause to arrest Mr. Henley for refusal to aid an officer—in other words, that he had arguable probable cause. [Filing No. 53 at 18.] In support of this argument, Trooper Sunier points again to his prior interactions with Mr. Henley, stating that he had in the past asked Mr. Henley to assist him in the execution of his duties. [Filing No. 53 at 18.] But the Court addressed the "reasonableness" of that belief above, concluding that no prudent person could have believed that Mr. Henley committed the offense of refusal to aid an officer.

As both this Court and the Seventh Circuit have noted in similar circumstances, "[t]he rub here lies in the substantial, if not complete, overlap of the issue of immunity and the principal issue on the merits. … In effect, we have come full circle on the probable cause question." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435-36 (7th Cir. 1993); *see also Hurt*, 880 F.3d at 841-42 (upholding denial of qualified immunity). In this case, because the Court has already determined that Trooper Sunier's belief as to probable cause was objectively unreasonable—that is, there is

no dispute as to the reasonableness of that belief—Trooper Sunier is not entitled to qualified immunity. [6]

### 3. Show Cause Pursuant to Rule 56(f)

Having reached these conclusions, the Court pauses here to take stock. To put it kindly, the parties' briefing as to the false-arrest claim was of limited utility to the Court. Trooper Sunier did not respond to Mr. Henley's arguments in support of summary judgment, apparently intending that the Court rely on the briefing in support of his own Motion instead. (This is, of course, in spite of the shifting inferences that the Court must draw in the instance of cross-motions.) Mr. Henley's arguments were thin on application, and both parties devoted disproportionate briefing attention to other issues. In short, the parties briefed past each other. Of course, in moving for summary judgment, each party asked the Court to conclude, as a matter of law, that he was entitled to judgment. Given that there were no disputed issues of material fact, the Court's role was to apply the applicable law to those facts. The Court did so, but its determination rested on grounds that were only obliquely briefed by the parties—*i.e.*, the statutory meaning of the term "when ordered."

The Court has concluded, based on the evidence presented by the parties and the applicable law, that Trooper Sunier lacked probable cause to arrest Mr. Henley. But based on the parties' briefing, the Court concludes that there is a possibility that the parties may not have anticipated the Court's specific grounds for reaching this conclusion. Out of an abundance of caution, the Court refrains at this time from entering judgment in Mr. Henley's favor. Under Federal Rule of

---

[6] Because the Court has granted Mr. Henley's Fourth Amendment claim relating to his arrest, it need not address his alternative First Amendment claim based on the same conduct. *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 711 (7th Cir. 2011) (concluding that plaintiffs were entitled to preliminary injunction based on a Second Amendment claim and declining to reach alternative First Amendment claim as "surplusage").

Civil Procedure 56(f)(2), after giving notice and a reasonable time to respond, the Court may "grant the motion on grounds not raised by a party."  As such, the Court offers Trooper Sunier a final opportunity to respond to the specific grounds upon which the Court has reached its conclusion, before judgment is entered in favor of Mr. Henley.

The Court **ORDERS** Trooper Sunier to **SHOW CAUSE** as to why, for the reasons discussed above, judgment should not be entered in favor of Mr. Henley on the false arrest claim. Trooper Sunier's submission may not exceed ten pages and must be filed within fourteen days of the issuance of this order.  Mr. Henley's response, should he choose to file one, is due within seven days of Trooper Sunier's filing and may not exceed ten pages.

Regardless of Trooper Sunier's response to this show-cause order, the Court **DENIES** his Cross-Motion for Summary Judgment as to the false-arrest claim.

### C. Move-Along Orders

Mr. Henley also moves for summary judgment as to the First Amendment claim stemming from Trooper Sunier's August 25, 2017 move-along order.  [Filing No. 49 at 11-12.]  Trooper Sunier moves for summary judgment on the First Amendment claims arising from both the August 24 and August 25, 2017 move-along orders.  The Court addresses each in turn.

#### 1. August 24, 2017

Mr. Henley contends that the move-along order issued by Trooper Sunier on August 24, 2017 constituted retaliation in violation of his First Amendment rights.  [Filing No. 47 at 7.]  He does not, however, move for summary judgment as to this encounter with Trooper Sunier.  [*See* Filing No. 49.]  As noted, Trooper Sunier seeks summary judgment with respect to this encounter.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for speaking out."  *Thayer*, 705 F.3d at 251.  To state a *prima facie* case at the

summary judgment stage, a plaintiff must show that: "(1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected activity;[7] and (3) his protected activity was a motivating factor in the [defendant's] decision to retaliate." *Daugherty v. Page*, 2018 WL 4938968, at *2 (7th Cir. 2018).

As to element one, whether Mr. Henley engaged in protected activity, the Court has located one sentence in Trooper Sunier's briefing that could be construed as argument relevant to this point. In his brief in support of summary judgment on Mr. Henley's First Amendment claims, Trooper Sunier states that "Plaintiff's alleged specific protected First Amendment activity is his 'signing.'" [Filing No. 53 at 20.] Trooper Sunier argues that "Plaintiff has yet to show that his specific form of 'signing' is protected by the First Amendment, in light of the requests made of him by Sunier to help him keep himself and the roads safe, and in light of Sunier observing him entering traffic and standing in the roadway." [Filing No. 53 at 20.] Trooper Sunier, however, misapprehends the relevant "protected activity" as to this claim. Mr. Henley's alleged protected activity is petitioning the government for redress of grievances—*i.e.,* filing this lawsuit. [*See, e.g.*, Filing No. 47 at 7 ("Defendant's retaliatory move along orders on or about August 24th and/or August 25th of 2017 violate[d] Plaintiffs' 1st Amendment Right to petition the government for redress of grievances."); Filing No. 57 at 16 ("…a finder of fact could easily find this to be [an] implicit move along order that … was in retaliation for the lawsuit").] Therefore, for purposes of this Motion, there is no genuine dispute as to whether Mr. Henley engaged in a protected activity— filing a lawsuit in this Court.

---

[7] Trooper Sunier does not address element two, and therefore, for the purposes of Trooper Sunier's Motion, it is undisputed that Mr. Henley suffered a deprivation likely to deter future protected activity.

The only disputed element, then, is whether the protected activity was a motivating factor in Trooper Sunier's decision to retaliate. A plaintiff "need only show that a violation of his First Amendment rights was a motivating factor of the harm he's complaining of; once he shows that[,] the burden shifts to the defendant to show that the harm would have occurred anyway." *Thayer*, 705 F.3d at 251-52. If the defendant produces evidence "that the same decision would have been made in the absence of the protected speech, the burden shifts back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real reason was retaliatory animus." *Id.* at 252. Ultimately, the Court must decide if, taking all of the facts and reasonable inferences in the plaintiff's favor, "there can be no reasonable dispute" that the allegedly offending conduct would have occurred "despite any animus toward [the] protected First Amendment activity." *Id.*

Here, Mr. Henley has provided evidence that his protected activity was a factor that motivated Trooper Sunier in issuing the move-along orders. Trooper Sunier does not dispute that on August 24, 2017, he told Mr. Henley that he was aware of Mr. Henley's lawsuit, and that the lawsuit did not give Mr. Henley the right to "do what [he] was doing." [Filing No. 48-6 at 144-146.] Therefore, the burden shifts to Trooper Sunier to provide evidence that the same decision would have been made in the absence of the protected activity.

Trooper Sunier's only argument in support of his claim that the move-along orders would have occurred regardless of the protected activity is that "Plaintiff's safety and the safety of the drivers on the road was the cause of those move along orders." [Filing No. 53 at 22.] The issue with Trooper Sunier's contention is that he cites no evidence in support of that statement, and therefore offers no evidence as to his actual (or possible) motivation. As the Court has repeatedly reminded litigants, it will not "scour the record" in search of evidence to defeat a motion for

summary judgment.[8]  *See, e.g.*, *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017).  Trooper Sunier, therefore, has not met his burden to provide evidence that the same decision would have occurred absent the protected activity.

Even assuming, however, that Trooper Sunier had met his burden, Mr. Henley provides evidence from which a rational finder of fact could infer that the proffered reason was pretextual. Trooper Sunier specifically articulated, at the moment of issuing the move-along order, that the lawsuit did not give Mr. Henley the "right" to engage in his signing activities, but he made no mention of the safety of Mr. Henley or the public.  In addition, Mr. Henley also points to Trooper Sunier's conversation with IMPD Officer Martin, during which they discussed putting a stop to Mr. Henley's "panhandling" activities.

The Court pauses here to make one final procedural note.  In concluding his argument as to the move-along orders, Trooper Sunier states that the move-along orders "were not retaliatory in nature, and Plaintiff must prove them to be otherwise."  [Filing No. 53 at 22.]  Trooper Sunier misstates Mr. Henley's burden as the non-moving party as to this claim.  To survive summary judgment, Mr. Henley must simply establish that there is a genuine dispute of material fact as to this claim.  For the reasons described above, he has done so here.

For these reasons, the Court **DENIES** Trooper Sunier's Motion for Summary Judgment as to Mr. Henley's First Amendment claim regarding the August 24, 2017 move-along order.

---

[8] Perhaps Trooper Sunier intended to refer to the facts he cited in support of his argument regarding the arrest-based First Amendment claim, [Filing No. 53 at 20], but (1) he did not do so; and (2) those facts involve only prior interactions that occurred between Trooper Sunier and Mr. Henley— not the interaction at issue here.  The Court has no basis upon which to infer that those facts are at all relevant to the circumstances surrounding the move-along orders.

*2. August 25, 2017*

As to Mr. Henley's First Amendment claim stemming from the August 25, 2017 move-along order, both parties move for summary judgment.  The parties' briefing in support of their motions, however, makes a grant of summary judgment for either party impossible.

Mr. Henley moves for summary judgment on this claim on the basis that Trooper Sunier has provided no evidence suggesting that Mr. Henley was blocking the passage of traffic or engaged in any activity that would have justified a move-along order.  [Filing No. 49 at 12.]  Mr. Henley does not reference retaliation as the theory of liability as to this claim or as the basis for his entitlement to judgment in his favor.

Trooper Sunier, in his brief in response to Mr. Henley's Motion, provides no argument or response to Mr. Henley's substantive argument regarding liability as to any First Amendment claim.  Instead, it addresses only the propriety of equitable and declaratory relief, and whether Mr. Henley may properly raise a constitutional challenge to the refusal to aid statute.  [Filing No. 58.] Trooper Sunier's brief in support of his Cross-Motion for Summary Judgment does address Mr. Henley's First Amendment move-along order claims, but it addresses both move-along orders simultaneously, and as alleging only retaliation.  [Filing No. 53 at 20-22.]  In response to Trooper Sunier's Motion for Summary Judgment on this claim, based on a retaliation theory, Mr. Henley raises the arguments detailed above as to the August 24 order.[9]  [Filing No. 57 at 15-16.]

---

[9] The Court notes that Trooper Sunier had reason to focus his briefing on a retaliation theory, because Mr. Henley's Third Amended Complaint states the following as to the legal basis for his First Amendment claims: "Defendant's retaliatory move along orders on or about August 24th and/or August 25th of 2017 violate[d] Plaintiffs' 1st Amendment Right to petition the government for redress of grievances."  [Filing No. 47 at 7.]  In his statement of claims, Mr. Henley does not specifically reference retaliation, only stating that the second move-along order "violated Plaintiff's rights under the 1st Amendment to the United State[s] Constitution."  [Filing No. 31 at 1.]

The Court could kindly describe this briefing as the proverbial ships passing in the night, and the Court expended considerable time and attention in its attempt simply to line up the parties' arguments. The Court need not rehash the analysis as to a retaliation claim, because Trooper Sunier's arguments as to this move-along order necessarily suffer from the same defects described as to the August 24 order. In any event, neither party has met his burden to establish that he is entitled to judgment as a matter of law on this claim, and indeed, the parties' briefing reads more like an afterthought than a wholehearted attempt at establishing an entitlement to judgment. The Court, therefore, **DENIES** both parties' Motions for Summary Judgment as to this claim.[10]

### D. Declaratory Relief

In his Third Amended Complaint, Mr. Henley requests as relief that the Court "[d]eclare that Defendant's actions violate the 1st and/or 4th Amendment to the United States Constitution for the reasons noted above." [Filing No. 47 at 7.] Trooper Sunier argues that declaratory relief is not available to Mr. Henley, because he seeks only a declaration that Trooper Sunier's past actions violated Mr. Henley's rights. [Filing No. 53 at 10.] Mr. Henley responds that because of the many prior interactions between the two, Mr. Henley is justified in believing that Trooper Sunier would continue to violate his rights in the future, and therefore that declaratory relief is appropriate. [Filing No. 57 at 12.]

---

[10] Out of an abundance of caution, the Court addresses one final issue regarding the move-along order claims. In his brief in support of summary judgment, Trooper Sunier follows his discussion of the First Amendment claims arising from the move-along orders with a subsection entitled "Sunier is Entitled to Qualified Immunity on Plaintiff's First Amendment Claim." [Filing No. 53 at 22.] This qualified immunity argument appears to apply only to Mr. Henley's alternative, First Amendment grounds for relief regarding his February 1, 2017 arrest. First, the heading references a single First Amendment "claim"—not two, as would be the case if this argument applied to the two First Amendment claims arising from the move-along orders. Second, the argument focuses entirely on case law involving false arrest, arguable probable cause, and the "First Amendment right to be free from a retaliatory arrest." [Filing No. 53 at 22-23.]

The Declaratory Judgment Act "permits a federal court to declare the rights of a party," and it "confers discretion on the courts[,] rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985). "The propriety of issuing a declaratory judgment may depend upon equitable considerations, and is also informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.*

As to Mr. Henley's false arrest claim, the Court has already determined that Trooper Sunier lacked probable cause to arrest Mr. Henley on that occasion. If this determination remains unchanged by the parties' briefing in response to the show-cause order, a declaratory judgment to that effect would overlap entirely with the Court's finding of liability under Section 1983 and the Fourth Amendment. *See, e.g., Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006) (reasoning that "by entering a declaratory judgment in [the plaintiff's] favor, the district court would be doing nothing more than reiterating the jury's conclusion..."). The finding regarding false arrest was fact-specific and did not constitute a more generalized determination as to the arrest of individuals engaged in signing.

Mr. Henley's First Amendment claims remain for resolution, so the Court need not determine at this stage whether any form of declaratory relief would be warranted. The Court notes, however, that *Pearson* applies equally to these claims, and would seem to foreclose declaratory relief as to those as well.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** the parties' Motions.

As to Mr. Henley's claim for false arrest in violation of the Fourth Amendment, the Court **ORDERS** Trooper Sunier to **SHOW CAUSE** as to why, for the reasons discussed above,

judgment should not be entered in favor of Mr. Henley on the false arrest claim. Trooper Sunier's submission may not exceed ten pages and must be filed within fourteen days of the issuance of this order. Mr. Henley's response, should he choose to file one, is due within seven days of Trooper Sunier's filing and may not exceed ten pages. The Court **DENIES** Trooper Sunier's Cross-Motion for Summary Judgment as to the false-arrest claim, [51].

The Court **DENIES** Trooper Sunier's Motion for Summary Judgment as to Mr. Henley's First Amendment claim arising from the August 24, 2017 move-along order, [51].

The Court **DENIES** both parties' Motions for Summary Judgment as to Mr. Henley's First Amendment claim arising from the August 25, 2017 move-along order, [48, 51].

The Court **GRANTS** Trooper Sunier's Motion as to the issue of injunctive relief, and **GRANTS** Trooper Sunier's Motion as to the issue of declaratory relief for the false-arrest claim, [51]. It **DENIES** Trooper Sunier's Motion as to the issue of declaratory relief for the remaining First Amendment claims, [51].

Therefore, still remaining for resolution are the following issues:

- partial summary judgment as to the false-arrest claim, following the parties' discharge of the Court's show-cause order pursuant to Rule 56(f), and any resultant damages as to that claim;

- liability and relief as to the First Amendment claims arising from the August 24 and August 25, 2017 move-along orders.

The Court requests that the Magistrate Judge confer with the parties at his earliest convenience regarding a possible resolution of these remaining matters, short of trial.

Date: 11/30/2018

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF only to all counsel of record.**